IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

NOAH KEHOE (a minor) and
JODY LUECK,

    Plaintiffs,

v.                                              Case No: 2:12-cv-1052

ST. MARY'S SPRINGS ACADEMY OF
FOND DU LAC, WISCONSIN, INC.,

    Defendant.

---

## COMPLAINT

---

NOW COME the plaintiffs, Noah Kehoe (a minor) and Jody Lueck, by their attorneys, Robert J. Gingras and Paul A. Kinne of Gingras, Cates & Luebke, who hereby submits the following:

### NATURE OF PROCEEDINGS

1.     This case is being brought pursuant to 42 U.S.C. sec. 2000(d) et seq. (Title VI) and 20 U.S.C. sec. 1681 et seq. (Title IX) whereby the plaintiff alleges that the St. Mary's Springs Academy of Fond du Lac, Wisconsin, Inc. discriminated against the plaintiff by depriving him of educational opportunities on account of his race, national origin, his gender and his religion (non-Catholic). This case also alleges a state law negligence claim against defendant St. Mary's Springs Academy of Fond du Lac, Wisconsin, Inc. for its failure to keep the plaintiff safe from harassment and intimidation.

### JURISDICTION AND VENUE

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. sec. 1331

for the Title VI and Title IX claims, and it has jurisdiction over the state law claim based upon 28 U.S.C. sec. 1367.

3. Venue is proper under 28 U.S.C. sec. 1391 in that all of the acts alleged to have been committed by the defendants occurred within the Eastern District of Wisconsin.

## PARTIES

4. Plaintiff Noah Kehoe (Noah) is a minor resident of Fond du Lac, Wisconsin.

5. Plaintiff Jody Lueck is Noah's mother who resides in Fond du Lac, Wisconsin.

6. Defendant St. Mary's Springs Academy of Fond du Lac, Wisconsin, Inc. (St. Mary's) is a private Catholic school operating in Fond du Lac, Wisconsin.

## FACTUAL BACKGROUND

7. In 2011, Noah began going to school at St. Mary's.

8. Noah is of Asian descent.

9. In 2011 and 2012, Noah was harassed by his classmates on account of his race. This harassment includes but is not limited to the following:

    a. Classmates referred to Noah as "Wang."

    b. Classmates called him a "gook."

    c. Classmates made "slant eye" gestures at him.

    d. Classmates told him to "go back to China."

    e. Classmates told Noah to "go have Asian babies."

    f. Classmates mocked Noah's speech patterns.

g.  Classmates would call to him, "Good Asian doggie!"

h.  Classmates also referred to him as "Keegan," a boy who had been driven from St. Mary's by student harassment prior to Noah's arrival.

i.  Classmates mocked Noah's eating habits.

j.  Classmates placed Noah on a "hit list," meaning that he was on a list of students the classmates intended to drive from the school by harassing them.

k.  Classmates told Noah the school was "ruined" because of him.

l.  Classmates offered to find and give Noah a gun so he could do them "a favor" and commit suicide.

10. In 2011 and 2012, Noah was harassed by his classmates on account of his sex and his (perceived) sexual orientation. Harassment includes but is not limited to the following:

a.  Classmates called Noah "gay," "queer" and a "fag."

b.  Male classmates would pantomime sex physically against Noah in a gesture colloquially known as "dry humping."

c.  Classmates mocked Noah's walking habits.

d.  Classmates also referred to him as "Keegan," a boy who had been driven from St. Mary's by student harassment prior to Noah's arrival.

e.  Classmates mocked Noah's eating habits.

f.  Classmates placed Noah on a "hit list," meaning that he was on a list of students the classmates intended to drive from the school by harassing them.

3

g. Classmates told Noah the school was "ruined" because of him.

h. Classmates offered to find and give Noah a gun so he could do them "a favor" and commit suicide.

i. Classmates made references to Noah's genitalia.

11. Much of this harassment was perpetrated on the social networking website, "Facebook."

12. Noah's mother, Jody Lueck, repeatedly complained to St. Mary's officials about the harassment her son endured at St. Mary's.

13. St. Mary's did not take any action to end the harassment. Instead, St. Mary's personnel responded, "Kids will be kids!"

14. In response to one of Lueck's demands that the school take action against the children responsible for the harassment, St. Mary's officials responded that it was a "business decision" with respect to whom St. Mary's would side with in the dispute. St. Mary's officials explained to Lueck that taking action against the harassers was impossible because many of the children accused of the harassment belonged to families who were "gold and silver level" donors to the school.

15. In October, 2011, Lueck raised her complaints about the harassment described above. St. Mary's official Erin Flood responded that "Facebook is out of my jurisdiction," and that Noah's "accusations" could not be substantiated.

16. In November, 2011, Lueck complained again. Again, St. Mary's took no action to end the harassment. In fact, Flood told Lueck that because Lueck and her children were not Catholic, the "holy family" would not intervene in the situation.

17. In December, 2011, Lueck again complained about the harassment. Flood told Lueck to quit abusing St. Mary's complaint system.

18. Lueck made additional complaints in January, February and March, 2012, to no avail.

19. On April 17, 2012, there was a meeting held with parents of some of the harassers, St. Mary's officials and Lueck. St. Mary's officials informed Lueck that the school was not going to do anything to end the harassment.

20. On April 23, 2012, Lueck removed Noah from St. Mary's.

21. The harassment described above adversely affected Noah's academic achievement.

22. The harassment described above created a hostile educational environment for Noah.

23. St. Mary's receives federal funds in support of its educational mission.

24. Lueck's relationship with Noah was adversely affected because of the harassment and assaults committed upon Noah.

### KEHOE'S FIRST CAUSE OF ACTION AGAINST ST. MARY'S – VIOATION OF TITLE VI – RACE DISCRIMINATION.

25. Plaintiff Kehoe restates the previous paragraphs as if set forth fully herein.

26. By engaging in the conduct described above, St. Mary's violated Title VI when it allowed a racially hostile learning environment to exist at St. Mary's.

27. The hostile environment has caused Noah severe and permanent economic, physical and emotional injuries.

## KEHOE'S SECOND CAUSE OF ACTION AGAINST ST. MARY'S – VIOLATION OF TITLES VI AND IX SEX DISCRIMINATION

28. Plaintiff Kehoe restates the previous paragraphs as if set forth fully herein.

29. By engaging in the conduct described above, St. Mary's violated Titles VI and IX when it allowed a sexually hostile learning environment to exist at St. Mary's.

30. The hostile environment has caused Noah severe and permanent economic, physical and emotional injuries.

## KEHOE'S THIRD CAUSE OF ACTION AGAINST ST. MARY'S – VIOLATION OF TITLE VI RELIGION DISCRIMINATION

31. Plaintiff Kehoe restates the previous paragraphs as if set forth fully herein.

32. By engaging in the conduct described above, St. Mary's failed to intervene and end the harassment to which Noah was subjected because Noah and his family were not Catholic.

33. This discrimination has caused Noah severe and permanent economic, physical and emotional injuries.

## KEHOE'S FOURTH CAUSE OF ACTION AGAINST ST. MARY'S – NEGLIGENCE

34. Plaintiff Kehoe restates the previous paragraphs as if set forth fully herein.

35. By failing to intervene to end the harassment described in this complaint, St. Mary's violated its duty of due care to Noah, a student under its care and supervision.

36. This negligence has caused Noah severe and permanent economic, emotional, and physical injuries.

## KEHOE'S FIFTH CAUSE OF ACTION AGAINST
## ST. MARY'S – PUNITIVE DAMAGES

37. Plaintiff Kehoe restates the previous paragraphs as if set forth fully herein.

38. By engaging in the conduct described above, St. Mary's acted in a willful, wanton and reckless disregard of Kehoe's rights, thus entitling Noah to an award of punitive damages.

## LUECK'S FIRST CAUSE OF ACTION
## LOSS OF SOCIETY AND COMPANIONSHIP

39. Plaintiff Lueck restates the previous paragraphs as if set forth fully herein.

40. The defendant's actions and omissions described in this complaint caused harm to Lueck's relationship with her minor child, Noah.

41. Said harm is permanent in nature.

WHEREFORE, the plaintiff requests a trial by jury along with the following relief:

A. Unspecified compensatory and punitive damages;

B. Any injunctive relief that the Court may deem just and proper to award;

C. An award of Plaintiffs' reasonable attorneys' fees and costs incurred in this action;

D. Pre- and post-judgment interest; and

E. Any other such relief as the Court may deem appropriate.

## JURY DEMAND

The plaintiff respectfully requests that this matter be tried before a jury of six (6) competent persons.

Dated this 15th day of October, 2012.

                                                **s/ Robert J. Gingras**
                                                Attorney Robert J. Gingras
                                                State Bar No. 1002909
                                                Attorney Paul A. Kinne
                                                State Bar No. 1021493
                                                Gingras, Cates & Luebke
                                                8150 Excelsior Drive
                                                Madison, WI 53717
                                                Telephone: 608-833-2632
                                                Fax: 608-833-2874
                                                gingras@gcllawyers.com
                                                kinne@gcllawyers.com